UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| JONATHAN DRAKE, ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> INDIANA RESOLUTION GROUP, LLC ) <br> d/b/a PHOENIX FINANCIAL SERVICES, ) <br> ) <br> Defendant. ) | Case No. 3:24-cv-00038-GFVT-EBA <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on the Defendant's Motion for Summary Judgment. [R. 12.] For the reasons set forth below, the Defendant's Motion will be **GRANTED** in part and **DENIED** in part.

**I**

Plaintiff Jonathan Drake initiated this action in Shelby Circuit Court on April 12, 2024, against Defendant Indiana Resolution Group d/b/a Phoenix Financial Services ("Phoenix"). [R. 1-1.] Mr. Drake therein brought claims under the Fair Debt Collection Practices Act, the Telephone Communications Protections Act, the Kentucky Consumer Protection Act, and claims of intentional and negligent infliction of emotional distress under state tort law. *Id.* On May 29, 2024, Defendant Phoenix removed the action to this Court, invoking its federal question and supplemental jurisdiction. [R. 1.] Mr. Drake has since withdrawn his TCPA claim, KCPA claim, state law tort claims, and FDCPA claim for repeated or continuous calling, leaving only the balance of claims under the FDCPA left to be resolved. [R. 14 at 7.]

On January 21, 2023, a medical debt allegedly owed by Mr. Drake, associated with Global Medical Response, was placed with Phoenix for collection. [R. 12-5 at 4.] Phoenix

claims that it sent Mr. Drake a letter on January 23, 2023, informing him of this debt and his various rights under the FDCPA. [R. 12-2 at 3.] Mr. Drake, on the other hand, claims his first communication from Phoenix occurred when he received a letter on April 14, 2023, informing him that he had a past due account balance. [R. 1-1 at 4.] The April Letter, provided by Mr. Drake and uncontested by Phoenix, did not include a statement of Mr. Drake's dispute rights. [R. 14-1 at 3.] However, the January Letter provided by Phoenix, the transmittal and receipt of which are disputed by Mr. Drake, did include a statement of Mr. Drake's dispute rights—albeit a statement that Mr. Drake contends is deficient. [R. 12-7 at 2; R. 14 at 5.] Phoenix moved for summary judgment, on the grounds that Mr. Drake failed to present any material question of fact as to whether Phoenix sent Mr. Drake the January Letter or whether Phoenix's January Letter failed to comply with the FDCPA. [R. 12-1 at 3-4; R. 16.] Phoenix also asserts that the record is devoid of any factual allegations that demonstrate that it engaged in misleading or unfair debt collection practices with respect to Mr. Drake. [R. 16 at 4-5.]

In response, Mr. Drake first contends that because he did not receive the January Letter, and Phoenix cannot prove that it actually sent the letter, Phoenix has not complied with the FDCPA. [R. 14 at 4.] Mr. Drake next contends that even assuming Phoenix sent the January Letter, a jury could find that the letter failed to effectively convey Mr. Drake's rights under the FDCPA. *Id.* at 5. Mr. Drake finally contends that Phoenix's debt collection practices were misleading, giving rise to liability under the FDCPA. *Id.* at 6-7. Thus, the present dispute hinges on whether Phoenix complied with various provisions of the FDCPA. The Court is tasked with determining whether this dispute is both genuine and material such that it must be resolved by a jury or whether Phoenix is entitled to judgment as a matter of law.

2

## II

### A

Under Rule 56, summary judgment is appropriate where the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-35 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. Of the Church*, 521 F.Supp.2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "[T]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). "Instead, 'the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'" *J.B-K.-1 v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 462 F. Supp. 3d 724, 731 (E.D. Ky. 2020), *aff'd sub nom. J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721 (6th Cir. 2022) (quoting *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)). Additionally, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" the Court may treat that fact as undisputed." Fed. R. Civ. P. 56(e).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.  Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine factual issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52).  In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).  Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

**B**

Congress enacted the Fair Debt Collections Practices Act in an effort to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C § 1692(e). The FDCPA protects consumers by imposing civil liability on debt collectors for certain prohibited debt collection practices such as "[t]he use or threat of use of violence," "causing a

4

telephone to ring. . .repeatedly or continuously with intent to annoy, abuse, or harass any person called at that number," or publishing to the public a list of consumers who allegedly refuse to pay debts, among other things. 15 U.S.C. § 1692d.

As mentioned above, the Plaintiff has withdrawn many of his claims. [R. 14 at 7 (withdrawing TCPA claim, all state-law torts and statutory claims, and the FDCPA claim for repeated or continuous calling).] The Plaintiff asserts that the remaining claims left to be resolved are claims for violation of § 1692(e), § 1692(f), and § 1692(g). For the purposes of resolving the instant motion, and because neither party has suggested otherwise, the Court presumes that Phoenix is a "debt collector" and Mr. Drake is a "consumer" within the meaning of the FDCPA. 15 U.S.C. §§ 1692a(3), (6), and 1692c(d).

**1**

The first issue the Court must confront is whether Phoenix has established the absence of a material factual dispute regarding whether it sent the required "validation notice" to Mr. Drake. Relevant to this action, the FDCPA requires a debt collector—either in its initial communication with the consumer or within five days after an initial communication—to issue a written "validation notice" containing:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
> 15 U.S.C. § 1692g(a).

Congress added this provision "specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Federal Home Loan Mrtg. Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007). Under the FDCPA, a debt collector must only include the five § 1692g disclosures in its "initial communication" with the consumer. 15 U.S.C. § 1692g(a). Additionally, the plain language of the FDCPA only requires that a debt collector *send* the notice—the debt collector need not establish that the notice is ever *received* by the consumer. *Campbell v. Credit Bureau Systems, Inc.*, No. 08-cv-177-KSF, 2009 WL 211046, at *11 (E.D. Ky. Jan. 27, 2009) ("[A] debt collector's only obligation is to *send* the validation notice within five days of the initial communication.") And where a debt collector has sent a valid notice to the consumer's address, a "presumption of delivery" arises. *Johnson v. Midland Credit Management Inc.*, No. 1:05-cv-1094, 2006 WL 2473004, at *13 (N.D. Ohio Aug. 24, 2006).

Of course, a debt collector does not satisfy its obligations under § 1692g by affixing a debtor's name to a letter, and sending a notice to any address; the notice must be "reasonably calculated to reach the consumer" and the "presumption of delivery" can be rebutted when the debt collector is aware that delivery was not achieved. *Id.* Thus, while a debt collector does not have to ensure receipt of the notice by the consumer, to comport with the stated purpose of the FDCPA, the debt collector must "send the validation notice to a valid and proper address where the consumer may actually receive it." *Id.* at 12.

It follows then that Phoenix need not establish that Mr. Drake actually received the validation notice. *Campbell*, 2009 WL 211046, at *11. As long as Phoenix can demonstrate that it sent the notice to Mr. Drake's address, it will benefit from the "presumption of delivery. *Johnson*, 2006 WL 2473004, at *13. Phoenix asserts that it is uncontested that it sent a letter

6

containing all of the required § 1692g disclosures to Mr. Drake on January 23, 2023. [R. 12-2 at 1.] As support, Phoenix first proffers several pages of internal data entries, the value of which is not entirely clear to the Court, as Phoenix did not attempt to explain how these data entries correlate to real events. [*See* R. 12-3 at 6-13.] As best the Court can tell, the entries reflect that sometime around January 23, 2023, a letter associated with Mr. Drake's account was generated, which triggered Phoenix's system to log the letter as "sent." *Id.* at 8. Phoenix did provide an electronic version of a letter, dated January 23, 2023, and addressed to Mr. Drake's home address, which it purports was the letter sent to Mr. Drake in January. [R. 12-3 at 15.] Phoenix also provided a declaration from its custodian of records, Anthony Albanese, in which Mr. Albanese states that Phoenix sent this letter to Mr. Drake on January 23, 2023. *Id.* at 4.

In response, Mr. Drake does not dispute that the address listed in the January Letter is his true and correct address. [R. 14.] However, Mr. Drake asserts that a material factual dispute exists regarding whether Phoenix actually ever placed the January Letter in the mail. *Id.* at 4. As support, Mr. Drake states that Phoenix's only evidence that it sent the January Letter comes in the form of internal codes and the declaration of a records custodian. *Id.* Mr. Drake further asserts that these internal codes "do not show deposit with the U.S. mails or any vendor proof of mailing," but rather they simply document "printing events and internal data fields." *Id.* Mr. Drake also directs the Court's attention to data entries logged in Phoenix's system on April 5, 2023, which reflect that the "Debtor Validation Period State Date" was changed from January 31, 2023 to April 4, 2023, and the "Debtor Validation Period End Date" was changed from March 17, 2023 to May 29, 2023. [R. 12-3 at 9.] Mr. Drake asserts that a reasonable factfinder could find that Phoenix's internal reset of the validation window meant that Phoenix recognized that the January Letter was never sent or received. [R. 14 at 4.]

7

In reply, Phoenix asserts that this internal status change reflects the April follow-up letter sent to Mr. Drake. [R. 16 at 1-2.] Phoenix spends much of its reply asserting that Mr. Drake only contests the receipt of the letter, and states that "the dispositive fact is that Phoenix sent the letter" to Mr. Drake's correct address. *Id.* at 2. While the Court agrees that it is dispositive whether Phoenix sent the January Letter, in the sense that resolution of this issue largely hinges on that fact, the Court is not so easily convinced. Not only does Mr. Drake claim that he never received the January Letter, but he also contests whether Phoenix sent the letter, which is unlike the factual predicate of any authority relied on by Phoenix.

The Court agrees with Phoenix that a consumer's unsupported assertion that the debt collector did not mail the validation notice is insufficient to create a material factual dispute, but Mr. Drake's contentions are not as unsupported as Phoenix suggests. Mr. Drake's contention that the January Letter was either not placed in the mail, or that Phoenix was on notice that Mr. Drake did not receive the letter does have support in the record. The Court finds that the internal reset of the validation window is particularly notable because, as Mr. Drake points out, this could have happened in response to Phoenix recognizing that the January Letter was not sent or received by Mr. Drake.

This begs the question of how a debt collector proves that they have sent a validation notice to a consumer, in the age of mass mailings, where it is not feasible that a debt collector will retain proof of mailing or have personal knowledge of every letter sent. In other contexts, the Sixth Circuit has held that "proof of a business system of preparing and mailing letters, and compliance with such a custom in the particular instance, is sufficient to establish proof of mailing." *Simpson v. Jefferson Standard Life Ins. Co.*, 465 F.2d 1320, 1324 (6th Cir. 1972). "In this context, courts often look to affidavits, declarations, and statements of corporate

8

representatives to prove that a letter was mailed." *Slavish v. I.C. Sys., Inc.,* No. 3:20-CV-403, 2023 WL 4504593, at *5 (M.D. Pa. June 12, 2023). One court has even noted that "declarations made by corporate representatives are sufficient to prove a corporate act, such as mailing notice by certified mail." *Cash v. AXA Equitable Life Ins Co.,* 229 F.Supp.3d 542, 548 (W.D. Tex. 2017).

In *Mahon v. Credit Bureau of Placer Cnty. Inc*, which Phoenix relies on heavily in its motion, the defendant provided the Court with a detailed explanation of its computerized tracking and filing software as support for the fact that it had sent the validation notice to the consumer. 171 F.3d 1197, 1199 (9th Cir. 1999). Although the consumer in *Mahon* did not even contest that the letter had been sent, the Court there had a very clear understanding of the defendant's mailing practices. *Id.* The Court in *Mahon* knew how the letters were generated by the defendant's computerized system, how the employees double-checked that every printed notice got placed into the mail by comparing the number of letters printed to the number of letters mailed, and how the defendant would know if a letter was returned as undeliverable. *Id.*

Here, Phoenix has provided a declaration from its records custodian, Mr. Albanese, in which he testifies that the records provided by Phoenix were compiled in the course of regularly conducted business activity. [R. 12-3 at 3.] He confirms that the records provided by Phoenix contain notes of all activity related to Mr. Drake's account. *Id.* Mr. Albanese also states that Phoenix sent its initial validation notice to Mr. Drake on January 23, 2023. *Id.* at 4. Notably absent from the record is any explanation of Phoenix's business practice for preparing and mailing validation notices or how the records provided demonstrate that Phoenix actually placed the letter in the mail. How does Mr. Albanese know that the January Letter was placed in the mail? How does Phoenix know that the letter was not returned as undeliverable? Perhaps the

9

records provided by Phoenix do in fact demonstrate this, but Phoenix has not explained to the Court how these records support its position. With these unanswered questions, the Court cannot say that Phoenix has demonstrated an absence of a material factual dispute on this issue.

Phoenix posits that Mr. Drake had the opportunity to conduct discovery "if he desired to probe into the circumstances of this letter being sent," and his failure to do so warrants judgment in Phoenix's favor. [R. 16 at 2.] But this misstates the summary judgment standard. Rule 56 puts this onus on Phoenix, as the moving party, to first demonstrate the absence of a material factual dispute. Fed. R. Civ. P. 56(a); *Hall Holding*, 285 F.3d at 424. Only after meeting this threshold does the burden shift back to Mr. Drake to demonstrate a genuine factual dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Reading the evidence in the light most favorable to Mr. Drake, as it must, the Court cannot say that Phoenix has demonstrated a lack of a material factual dispute regarding whether it sent the January Letter to Mr. Drake. As such, the Court will deny summary judgment with respect to Mr. Drake's § 1692g claim on this issue.

**2**

Mr. Drake next asserts that even assuming Phoenix sent the January Letter, a reasonable jury could find that the letter falls short of the § 1692g requirements. [R. 14 at 5-7.] The Court disagrees. As to the actual contents of the notice, the debt collector must "effectively convey" the notice to the debtor. *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999). The Sixth Circuit uses the "least sophisticated debtor" standard to determine whether a communication "effectively conveys" a consumer's validation rights. *Id.* This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Id.* "The basic purpose of the least-sophisticated-consumer standard is to

10

ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Federal Home Loan Mortg. Corp.*, 503 F.3d at 509 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993)). "[A]lthough this standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Federal Home Loan Mortg. Corp.*, 503 F.3d at 509-10 (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3rd Cir. 2000)).

Here, Mr. Drake first asserts that the January Letter provided by Phoenix "places a limited-time settlement" on the front of the letter, setting a fixed "dispute by" date, and "relegating full statutory rights" to the back of the letter. *Id.* at 5. Mr. Drake posits that a jury could find this format and dating confusing to the least sophisticated consumer. *Id.* Mr. Drake next asserts that a jury could find Phoenix's internal reset of the "validation deadline" confusing to the least sophisticated consumer. *Id.* at 5-6. Mr. Drake finally asserts that the timing of the April Letter created an inconsistency regarding the validation window that could mislead the least sophisticated consumer. *Id.* at 7.

In reply, Phoenix contends that Mr. Drake has provided no explanation of where the potential confusion would arise with regard to the January Letter. [R. 16 at 4.] Phoenix further asserts that Phoenix's internal account notes could not possibly confuse a consumer because a consumer would not be privy to these internal records. *Id.* Finally, Phoenix notes that there was no inconsistency created by the April Letter with respect to the operative validation window, bearing in mind that the core of Mr. Drake's entire claim is that the April Letter did not include any information about the validation window. *Id.*

In *Smith*, the case relied on by both parties, the debt collector defendant sent the

consumer plaintiff a validation notice that stated "[i]f we are not notified that your debt has been paid by April 4, and if this debt is not disputed, we shall advise you of our final position regarding the status of your account." 167 F.3d at 1053-54. The consumer asserted that this phrase threatened her statutory rights, but the Court disagreed, holding that "even the least sophisticated consumer would not have understood the language. . .to threaten his right to dispute the validity of his debt within thirty days." *Id.* at 1055. The Court noted that the debt collector's letter did not state that the debt collector would initiate legal action or imply that the consumer would suffer from bad credit if she did not pay her debt by the date provided. *Id.* Thus, the letter did not "threaten or encourage" the least sophisticated consumer to forego her thirty-day validation period in violation of the FDCPA. *Id.*

The Court agrees with Phoenix that Mr. Drake has failed to present a triable issue regarding the contents of the January Letter. First, the Court fails to see how Phoenix's internal records could confuse a consumer that does not have access to said records. Additionally, Mr. Drake does not explain how the limited-time settlement "threatens or encourages" the least sophisticated debtor to ignore his thirty-day validation period. *See Smith*, 167 F.3d at 1055. The January Letter extended a sixty-day offer to Mr. Drake to settle his account for a reduced payment. [R. 12-3 at 15.] Additionally, the letter conspicuously stated, "this offer and the timeframe for accepting it do not in any way affect your right to dispute the debt or request verification of this debt by March 9, 2023, as described in this letter." [R. 12-3 at 15.] Because Mr. Drake has presented no specific facts as to how the January Letter failed to effectively convey his § 1692g rights, the Court finds that Phoenix has established the absence of a material factual dispute with regards to the contents of the January Letter. As such, Phoenix is entitled to summary judgment on this issue.

**3**

Mr. Drake's remaining claims arise under §1692e and §1692f, which protect consumers from false or misleading representations and unfair or unconscionable means used in the collection of a debt, respectively. At this juncture, the record reflects that Mr. Drake has not provided any factual support for these claims, and he does not even provide the specific sections of those statutes that he believes Phoenix has violated. [R. 1-1 at 5-6; R. 14 at 6-7.] As support for both his § 1692e and § 1692f claim, Mr. Drake provides a single sentence stating that "a jury could reasonably read Phoenix's communications and internal date resets to imply one set of validation deadlines on the face of the January letter. . . while Phoenix later internally treated the April 14 mailing as the start of the validation period." [R. 14 at 7.] Mr. Drake goes on to say this "inconsistency could mislead the least-sophisticated consumer about when his rights ran and how to invoke them, supporting liability under § 1692e and § 1692f." *Id.*

Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." That section then lists sixteen examples of conduct that rises to that level. 15 U.S.C. § 1692e(1)-(16). Under § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." That section then lists several examples of conduct that violates the statute. 15 U.S.C. § 1692f(1)-(8). Although both sections explicitly state that the examples provided are non-exhaustive lists, and the Sixth Circuit has held that the FDCPA is "extraordinarily broad," the Court is not under a duty to scour the record in search of a material factual dispute. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir, 1992); *Street*, 886 F.2d at 1479–80. Additionally, issues "unaccompanied by some effort at developed argumentation are deemed waived." *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006).

After reviewing the record, the Court finds that Phoenix has satisfied its burden of demonstrating the absence of a material factual dispute regarding both the § 1692e and § 1692f claims. Mr. Drake has proffered no facts, material or otherwise, that show Phoenix used false, misleading, deceptive, unfair, or unconscionable means in collecting the debt allegedly owed by Mr. Drake. Again, Mr. Drake tries to assert that Phoenix's internal treatment of his account could somehow mislead the least sophisticated consumer. [R. 14 at 7.] And again, the Court fails to see how Phoenix's internal records could mislead a consumer that does not have access to said records. Mr. Drake's single sentence at the end of his response does not even come close to satisfying his affirmative duty as the non-moving party "to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *J.B-K.-1,* 462 F. Supp. 3d at 731. As such, Phoenix's motion for summary judgment will be granted as to Mr. Drake's § 1692e and § 1692f claims.

### III

Defendant Phoenix asserts that it is entitled to judgment in its favor on all claims brought by Plaintiff Jonathan Drake. While there is insufficient evidence to create a triable issue on Plaintiff Drake's §1692e, § 1692f, and §1692g claim with respect to the contents of the validation notice, Plaintiff Drake has presented sufficient evidence for a jury to find that Phoenix did not actually place the January Letter in the mail. Thus, Mr. Drake's § 1692g claim with respect to the mailing of the January Letter survives.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Indiana Resolution Group d/b/a Phoenix Financial Services' Motion for Summary Judgment **[R. 12]** is **GRANTED** in part and **DENIED** in part.

This the 17th day of December, 2025.

                                                      Gregory F. Van Tatenhove
                                                     United States District Judge